UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEEFE KAPLAN MARITIME, INC, <br><br>Plaintiff, <br><br>v. <br><br>THE VESSEL "CYGNET", <br><br>Defendant. | Case No. 4:17-cv-03899-KAW <br><br>**ORDER GRANTING MOTION FOR DEFAULT JUDGMENT** <br><br>Re: Dkt. No. 22 |

On July 10, 2017, Plaintiff Keefe Kaplan Maritime, Inc. ("KKMI") filed this admiralty and maritime action *in rem* against Defendant the Vessel "Cygnet," Documentation No. 693436. (Compl., Dkt. No 1.) Plaintiff alleges that between July 14, 2014, and June 30, 2017, the Vessel incurred berthing charges and late fees at KKMI's boatyard in Richmond, California, which remain unpaid. (Compl. ¶¶ 8, 10.) Now, Plaintiff seeks to foreclose a maritime lien against the Vessel, her engines, rigging, sails, boats, tackle, apparel, and furniture pursuant to the Federal Maritime Lien Act ("FMLA"), 46 U.S.C. § 31342, and seeks a judgment condemning the Vessel and an order for its sale to pay the outstanding amount owed.

On November 17, 2017, Plaintiff filed a motion for default judgment. (Mot., Dkt. No. 22.) On January 18, 2018, the Court held a hearing on Plaintiffs' motion for default judgment, at which no potential claimants appeared. For the reasons set forth below, the Court GRANTS Plaintiff's motion for default judgment.

**I. BACKGROUND**

Defendant Vessel is a fiberglass recreational sailing vessel approximately 47' in length. (Compl., Dkt. No. 1 ¶ 3). On July 14, 2014, the Vessel's owner, Herbert A. Moore, entered into a Service Agreement with Plaintiff, in which Plaintiff agreed to provide berthing to the Vessel at a

reduced daily berthing rate while it was located in KKMI's boatyard in Richmond, California awaiting repair orders from Moore. (Compl. ¶ 5; Service Agreement, Decl. of Paul Kaplan, "Kaplan Decl.," Dkt. No. 23, Ex. 2.) The Vessel was and remains berthed at the KKMI's boatyard under the Service Agreement. (Compl. ¶¶ 4-8).

Plaintiff alleges that between July 14, 2014 and June 30, 2017, pursuant to the Service Agreement, the Vessel incurred $6,535.50 in berthing charges, plus $108.50 in late fees (at a rate of 0.83% for each thirty day period unpaid), for a total outstanding balance of $6,644.00 as of June 30, 2017. (Compl. ¶ 6-10.) Plaintiff demanded payment of the outstanding amount, but it has not been paid. (Compl. ¶ 12.) Plaintiff alleges that the vessel continues to incur berthing charges at the rate of $70.50 for each day after June 30, 2017, until the Vessel is lawfully removed from KKMI's boatyard (Compl. ¶ 8.)

As a result, Plaintiff filed the instant *in rem* action, asserting a maritime lien against the Vessel, her engines, rigging, sails, boats, tackle, apparel, and furniture pursuant to 46 U.S.C. § 31341(a)(1) and general maritime law (Compl. ¶ 13.)

On July 18, 2017, the Court approved Plaintiff's proposed warrant of arrest (Dkt. No. 11), ordering that a warrant be issued for the arrest of the Vessel, which the Clerk of Court issued. (Dkt. No. 12.) Concurrently, the Court granted Plaintiff's Application for Appointment of a Substitute Custodian, appointing Paul Kaplan, the chief executive officer of KKMI, custodian of the Vessel and authorizing the U.S. Marshal for the Northern District of California to surrender possession of the Vessel to him. (Dkt. No. 10.) The Marshal arrested and served the Vessel on July 21, 2017, at KKMI's boatyard in Richmond, California. (Dkt. Nos. 13 & 19). The U.S. Marshal filed the executed return of Arrest Warrant on August 7, 2017 (Dkt. No. 13) and the executed return of the Summons on September 21, 2017 (Dkt. No. 19).

Plaintiff published a Notice of Action and Arrest in The Daily Journal, in compliance with Admiralty Local Rule 4-2(a), and Plaintiff filed the Proof of Publication pursuant to Admiralty Local Rule 4-2(b). (Dkt. No. 14.)

On September 5, 2017, Plaintiff requested entry of default (Dkt. No. 17), which the Clerk of Court declined on September 11, 2017, because the U.S. Marshal's service of the summons was

not returned executed. (Dkt. No. 18.) The U.S. Marshal ultimately filed the executed return on service of the summons on September 21, 2017. (Dkt. No. 19.) Plaintiff re-filed its request for entry of default on October 30, 2017, and default was entered on November 17, 2017 (Dkt. Nos. 21 & 26). No one has appeared in this action or filed a verified statement of right of possession or ownership interest in the Vessel.

On November 16, 2017, Plaintiff filed the instant motion for default judgment. (Mot., Dkt. No. 23).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) permits a court to enter a final judgment in a case following a defendant's default. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995,999 (N.D.Cal 2001). Whether to enter a judgment lies within the court's discretion. Id. At 999 (citing *Draper v. Coombs*, 792 F.2d 915,924-925 (9th Cir. 1986)).

Before assessing the merits of a default judgment, a court must confirm that it has subject matter jurisdiction over the case and personal jurisdiction over the parties, as well as ensure the adequacy of service on the defendant. See *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). If the court finds these elements satisfied, it turns to the following factors ("the Eitel factors") to determine whether it should grant a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of Plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,](5) the possibility of a dispute concerning material facts[,](6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring a decision on the merits.

*Eitel v. McCool*, 782 F. 2d 1470, 1471-72 (9th Cir. 1986) (citation omitted).

Upon entry of default, all factual allegations within the complaint are accepted as true, except those allegations relating to the amount of damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). Where a default judgment is granted, the scope of relief "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

///

///

3

**III. DISCUSSION**

**A. Magistrate Judge Jurisdiction to Enter Default Judgment**

As an initial matter, the Court must address whether the undersigned magistrate judge may enter judgment in light of the fact that Mr. Moore has not appeared nor consented to magistrate jurisdiction pursuant to 28 U.S.C. § 636(c). Section 636(c) confers magistrate judges the authority to enter judgment in a civil action "upon consent of the parties." Generally, the consent of all of the parties, including unserved defendants, is required for a valid judgment to be entered. *Williams v. King*, 875 F.3d 500, 504 (9th Cir. 2017).

Here, however, the action is *in rem* against the Vessel. In *in rem* forfeiture proceedings, the Ninth Circuit has held that a putative claimant's failure to comply with the applicable filing requirements precludes standing as a party to the action, such that the property owner's consent to magistrate judge jurisdiction is not a prerequisite to the entry of default judgment against his interest in the subject property. *United States v. Real Property*, 135 F.3d 1312, 1316-17 (9th Cir. 1998). In *Williams*, the Ninth Circuit affirmed this narrow exception, such that the undersigned is vested with jurisdiction to enter judgment against the Vessel even absent the consent of the property owner. *See* 875 F.3d at 504.

Accordingly, since the undersigned has obtained consent from the only party to the action—Plaintiff— the Court may enter default judgment.

**B. Jurisdiction and Service of Process**

In considering whether to enter default judgment, a district court must first determine whether it has jurisdiction over the subject matter and the parties to the case. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("When the entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties.")

    **i. Subject Matter Jurisdiction**

This Court has jurisdiction over this action under 28 U.S.C. §1333, which vests district courts with original jurisdiction over "any civil case of admiralty or maritime jurisdiction." (28 U.S.C. §1333). An *in rem* action may be brought to enforce any maritime lien, or whenever a

4

1  statute of the United States provides for a maritime action to be brought *in rem* (Fed. R. Civ. P.

2  Supp. C (1)). Here, Plaintiff seeks to enforce a maritime lien under the Federal Maritime Lien Act

3  ("FMLA"), 46 U.S.C. § 31342. Accordingly, the Court has subject matter jurisdiction over this

4  action. *See Ventura Packers, Inc. v. F/V Jeanine Kathleen*, 305 F.3d 913, 918-23 (9th Cir. 2002)

5  (holding that the Maritime Lien Act provides a statutory basis for the exercise of a district court's

6  admiralty jurisdiction).

### ii. Personal Jurisdiction

Federal courts have a three prong test to determine whether specific, personal jurisdiction may be exercised over a nonresident defendant: (1) the defendant purposefully directed its activities toward residents of the state or purposefully avails himself of the privileges of conducting activities in the forum; (2) the cause of action arises out of the defendant's contacts with the state; and (3) the exercise of jurisdiction is reasonable. *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003).

#### a. Purposeful Availment

"A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). Such actions are considered to be a purposeful availment of the privilege of conducting activities within the State, therefore invoking the benefits and protections of its laws. *Id*. As a "quid pro quo" for these "benefits and protections," a defendant must "submit to the burdens of litigation in that forum." *Id*. Factors evaluated include: prior negotiations and contemplated future consequences, the terms of the contract, and the parties' actual course of dealing. *Doe v. Unocal Corp.*, 248 F.3d 915, 924 (9th Cir. 2001).

Owner Herbert A. Moore is located in Victoria, British Columbia, Canada. (Kaplan Decl., Ex. 1.) The Service Agreement, dated July 14, 2014, included storage and repairs to take place in Richmond, California. (Kaplan Decl., Ex. 2.) In furtherance of this agreement, Moore tendered partial payment and left the Vessel in a berth at KKMI. (Compl. ¶ 7.) Therefore, the course of the

dealings by the parties in confirms that Moore availed himself of the privilege of doing business in California.

### b. The Cause of Action Arises Out of Defendant's Contacts with the Forum State

This element is established if Plaintiff would not have been injured "but for" the nonresident defendant's forum-related activities. *See Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). Here, the Vessel's continued berthing is a breach of contract. Therefore, "but for" Moore's conduct, Plaintiff would not have suffered harm in the form of unpaid berthing payments, plus interest. Thus, Plaintiff satisfies the second prong of specific jurisdiction.

### c. Reasonableness

The Ninth Circuit looks to seven factors to determine reasonableness: "(1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998). A balancing test is employed, and no one factor is dispositive. *Id.* at 1323.

#### 1. Purposeful Interjection

Distinct from purposeful availment, the Court must consider the degree to which a defendant interjected itself to the privileges and forum of California. *See id.* The berthing of the Vessel in California for repair and storage is sufficient to satisfy this prong.

#### 2. Burden on Defendant

"The unique burdens placed upon one who must defend in a foreign system should have significant weight in assessing the reasonableness of stretching the long arms of personal jurisdiction over national borders." *Asahi Metal Ind. v. Superior Court,* 480 U.S. 102, 114 (1987). However, "modern advances in communications and transportation have significantly reduced the burden of litigating in another country." *Sinatra v. National Enquirer*, 854 F.2d 1191, 1199 (9th

Cir. 1988). Moore decided to berth the Vessel in Richmond, California, and signed a contract agreeing to same. Nevertheless, he has chosen not to defend or engage in this action.

### 3. Extent of Conflict with the Sovereignty of the Defendant's State

Conflict with the sovereignty of a defendant's state requires "an examination of the competing sovereign interests in regulating [the defendant's] behavior." *Dole Food Co.*, 303 F.3d at 1115. Since sovereignty concerns inevitably arise whenever a United States court exercises jurisdiction over a foreign national, this factor is "by no means controlling." *Ballard*, 65 F.3d at 1501. Otherwise, "it would always prevent suit against a foreign national in a United States court." *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1333 (9th Cir. 1984). Sovereignty concerns weigh more heavily when the defendants have no United States-based relationships." *Core–Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1489 (9th Cir. 1993) (citing *Sinatra*, 854 F.2d at 1191).

There does not appear to be a conflict between United States and Canadian law. At the very least, this factor is neutral.

### 4. California's Interest in Adjudicating the Dispute

"California maintains a strong interest in providing an effective means of redress for its residents [who are] tortiously injured." *Sinatra*, 854 F.2d at 1200. Plaintiff conducts business in California, such that California courts possess an interest in adjudicating disputes involving resident corporate entities.

### 5. The Most Efficient Judicial Resolution of the Controversy

Efficiency in the jurisdictional context is focused on the location of the evidence and witnesses. *Caruth v. International Psychoanalytical Ass'n,* 59 F.3d 126, 129 (9th Cir. 1995). The Vessel and most of the documents are located in the Northern District. This factor, however, is "no longer weighed heavily given the modern advances in communication and transportation." *Panavision,* 141 F.3d at 1323.

### 6. Importance of the Forum to the Plaintiff's Interest in Convenient and Effective Relief

Courts have previously noted that this factor is not of paramount importance. *See, e.g., Dole Food Co., Inc. v. Watts,* 303 F.3d 1104, 1116 (9th Cir. 2002). Notwithstanding, Plaintiff

7

would benefit from litigating from California, as its operations are located here and the Vessel is located in the district. Thus, while given little weight, this factor weighs in favor of reasonableness.

### 7. Existence of an Alternative Forum

The only alternative forum in this case would be British Columbia, Canada, which, given that it is a foreign jurisdiction, does not present Plaintiff an equal opportunity to litigate its claim.

In light of the foregoing factors, the exercise of jurisdiction over Defendant Vessel is reasonable, and the Court may exercise personal jurisdiction over Defendant.

### iii. Venue

Venue is proper, because the Court has jurisdiction over the parties, and the Vessel is located in the district. (Compl. ¶ 4.)

### iv. Service of Process

In its motion, Plaintiff contends that it has complied with the service requirements set forth in Federal Rule of Civil Procedure Supplemental Rule C(3)(b)(i). This rule provides that, "If the property that is the subject of the action is a vessel or tangible property on board a vessel, the warrant and any supplemental process must be delivered to the marshal for service." Fed. R. Civ. P. Suppl. R. C(3)(b)(i). Plaintiff submits that the U.S. Marshal's Process Receipt and Return shows that the Vessel's custodian was served when the Vessel was arrested on July 21, 2017. (Dkt. Nos. 13 & 19).

Next, Plaintiff asserts that it complied with the notice requirements set forth in Admiralty Local Rule 4-2(a) when it published notice in The Daily Journal. (Dkt. No. 14.) This rule provides:

> (a) Publication. The public notice specified by Fed. R. Civ. P. Supp. C(4) shall be published once in a newspaper named in Civil L.R. 77-4, and plaintiff's attorney shall file a copy of the notice as it was published with the clerk.
> The notice shall contain:
> (1) The court, title, and number of the action;
> (2) The date of the arrest;
> (3) The identity of the property arrested;
> (4) The name, address, and telephone number of the attorney for plaintiff;
> (5) A statement that any person who asserts a right of possession of any ownership interest in the property pursuant to Fed. R. Civ. P. Supp. (C)(6) must file a

verified statement of right or interest within 14 days of the execution of process or within the period specified by court order;

(6) A statement that any person required to file a verified statement of right or interest must also file and serve an answer to the complaint within 21 days after filing the statement of interest or right, and that otherwise, default may be entered and condemnation ordered;

(7) A statement that applications for intervention under Fed. R. Civ. P. 24 by persons claiming maritime liens or other interests against the property shall be filed within the time fixed by the court; and

(8) The name, address, and telephone number of the marshal.

The undersigned finds that the Proof of Publication (Dkt. No. 14) conforms to Admiralty Local Rule 4-2(a)'s requirements. Based upon the foregoing, the Court finds that personal service upon the Vessel "Cygnet" was properly effected.

Pursuant to Admiralty Local Rule 6-2(b), after the entry of default, a default judgment may be entered pursuant to Federal Rule of Civil Procedure 55(b). The Court may enter default judgment upon a showing that: (1) notice has been given as required by Admir. L.R. 6-1(a)(2) and (b)(2); (2) the time to answer has expired; and (3) no one has filed a verified statement of right of possession or ownership interest in the property. Admir. L.R. 6-2(b)(1)-(3).

Admiralty Local Rule 6-1, in turn, provides in relevant part:

> (a) Notice Required. A party seeking a default judgment in an action in rem must show that due notice of the action and arrest of the property has been given:
> …
> (2) In actions not subject to Fed. R. Civ. P. Supp. G:
> (i) By publication as required in Fed. R. Civ. P. Supp. C(4);
> (ii) By service upon the master or other person having custody of the property; and
> (iii) By service under Fed. R. Civ. P. 5(b) upon every other person who has not appeared in the action and is known to have an interest in the property (Admir. L.R. 6-1(a)(2)).

First, Plaintiff has properly given notice in compliance with Admiralty Local Rule 6-1(a)(2)(i) by the publication of the Notice of Action and Arrest. (Dkt. No. 14.) The Notice expressly stated, in relevant part:

> Any person who asserts a right to possession of any ownership interest in the foregoing vessel pursuant to Fed. R. Civ. P. Supp. C(6) must file a verified statement of right or interest within 14 days of the execution of process or within the period specified by court order. Any person required to file a verified statement of right or interest must also file and serve an answer to the complaint within 21 days after filing the statement of interest or right, and that

> otherwise, default may be entered and condemnation ordered. Applications for intervention under Fed. R. Civ. P. 24 by persons claiming maritime liens or other interest against the vessel shall be filed within the time fixed by the court.

*Id.*

Plaintiff complied with Admiralty Local Rule 6-1(a)(2)(ii) by service upon Defendant Vessel and the Substitute Custodian by the U.S. Marshal. (Dkt. No. 19.)

Plaintiff has also given notice as required under Admiralty Local Rule 6-1(a)(2)(iii) by service under Federal Rule of Civil Procedure 5(b) upon every other person who has not appeared in the action and is known to have an interest in the property. (Dkt. No. 24.) Here, that person is Herbert A. Moore. (*See* Kaplan Decl., Ex. 1; Decl. of Richard J. Alexander, "Alexander Decl.," Dkt. No. 24 ¶¶ 2-3.)

Further, Admiralty Local Rule 6-1(b)(2)(i) provides that notice must be given in the case of a vessel documented under the laws of the United States, by the plaintiff attempting to notify all persons in the United States Coast Guard Certificate of Ownership. Plaintiff complied with this requirement by giving the notice as required by Admiralty Local Rule 6-1(b)(2)(i) for this documented vessel upon Herbert A. Moore who has a recorded interest in the vessel (in addition to title), as well as by serving Moore with the summons and complaint at his last known address, pursuant to Rule 5(b)(2)(C). (Alexander Decl. ¶¶ 2-3).

Lastly, Plaintiff contends that no one has filed a verified statement of right of possession or ownership interest in the Vessel. *Id.*

Thus, Plaintiff has satisfied each of the requirements set forth in Admiralty Local Rule 6-2(b) and has complied with the notice requirements of Admiralty Local Rule 6-1(a)(2). Further, no interested party has filed a timely verified statement asserting an interest in the Vessel. Accordingly, service was proper.

### C. Application to the Case at Bar

Since the Court has jurisdiction in this matter, this Court must turn to the *Eitel* factors to determine whether the entering of a default judgment is appropriate in this matter.

#### i. Possibility of Prejudice to Plaintiff

Under the first factor, the Court must determine whether Plaintiff will be prejudiced if the

Court denies its motion for default judgment. *Eitel*, 782 F.2d at 1471-72. As set forth in the complaint, pursuant to the Service Agreement, Plaintiff provided necessaries to the Vessel, and despite its demand for payment, Plaintiff has been unable to recover the outstanding amounts owed for berthing and late fees (Compl. ¶¶ 5-11.) Thus, if the Court were to deny Plaintiff's motion, Plaintiff would be unable to recover the outstanding amounts and further delay in securing a judgment would only increase the chances that Plaintiff will be unable to recover such amounts. Accordingly, this factor weighs in favor of default judgment. See *United States v. Mare Island Sales, LLC*, 2008 WL 4279406, at *2(E.D. Cal. Sept. 16, 2008).

### ii. Merits of Plaintiff's Substantive Claim and the Sufficiency of the Complaint

The second and third *Eitel* factors focus on the merits of Plaintiff's substantive claims and the sufficiency of the Complaint. *Eitel*, 782 F.2d at 1471-72. In order for these factors to weigh in Plaintiff's favor, Plaintiff must assert claims upon which it may recover. See *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002). As indicated above, Plaintiff asserts and seeks to foreclose a maritime lien against the Vessel under 46 U.S.C. § 31342 based on unpaid fees for berthing that Plaintiff provided pursuant to the Service Agreement and the subsequent late charges.

46 U.S.C. § 31342 provides:
    (a) Except as provided in subsection (b) of this section, a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner--
        (1)    has a maritime lien on the vessel;
        (2)    may bring a civil action in rem to enforce the lien; and
        (3)    is not required to allege or prove in the action that credit was given to the vessel.
    (b) This section does not apply to a public vessel. 46 U.S.C. § 31342.

In order to establish a maritime lien for necessaries, a supplier must show: (1) that the goods or services were provided to the vessel; (2) that the goods or services were "necessaries"; (3) that the charges are reasonable in amount; and (4) that they were ordered by someone with the appropriate authority. *Belcher Co. of Ala. v. M/V Martha Mariner*, 724 F.2d 1161, 1164 (5th Cir. 1984); see also *Int'l Seafoods of Alaska, Inc. v. Park Ventures, Inc.*, 829 F.2d 751, 753 (9th Cir. 1987); *Farwest Steel Corp v. Barge Sea Span 241*, 769 F.2d 620, 623 (9th Cir. 1985). Plaintiff has made a sufficient showing as to each of these factors. Section 31301(4) states that

11

"'necessaries' includes repairs, supplies, towage, and the use of a dry dock or marine railway[.]" 46 U.S.C. § 31301(4). "The list is not exhaustive, and in fact, modern admiralty jurisprudence interprets 'necessaries' broadly, as anything that facilitates or enables a vessel to perform its mission or occupation." *Ventura Packers*, 305 F.3d at 923. "The term 'necessaries' includes most goods or services that are useful to the vessel to keep her out of danger." *Id.* Here, the Court finds that Plaintiff has made an adequate showing establishing the existence of a maritime lien under 46 USC § 31342.

First, Plaintiff provided berthing to the Vessel pursuant to the Service Agreement from July 2014 through July 21, 2017 (Compl. ¶ 5; Kaplan Decl. ¶¶ 1-6.) Between July 1, 2014, and July 21, 2017, the Vessel incurred berthing charges all of which were paid by the Owner except the balance amounting to $8,563.83.00 as of July 21, 2017, the date of arrest of the Vessel, plus late fees in the amount of $108.50, which remain outstanding, for a total of $8,671.83. (Kaplan Decl. ¶¶ 7-9.)

Second, berthing services are "necessaries" under 46 USC §31301(4). See *Crescent City Harbor District*, 2008 WL 5211023, at *3 (finding that wharfage is considered a necessary under maritime law); *Canton Port Servs. v. M/V Snow Bird*, 690 F. Supp. 2d 405, 408 (D. Md. 2010) (finding that docking services were necessaries under the Federal Maritime Lien Act); *Am. E. Dev. Corp. v. Everglades Marina, Inc.*, 608 F.2d 123, 125 (5th Cir. 1979) (recognizing that "[s]everal courts have imposed maritime liens for docking, wharfage, or storage fees . . ..").

Third, the charges that Plaintiff seeks are reasonable and are of the type that can be expected by a boatyard providing berthing to a vessel over an extended period of years. *See Crescent City Harbor Dist.*, 2008 WL 5211023, at *3.

Fourth, Moore procured the services when he executed the Service Agreement. (Kaplan Decl., Ex. 1.) Thus, under 46 U.S.C. § 31341(a)(1), as the owner of the vessel, Moore is statutorily presumed to have authority to procure necessaries for it. Taken together, the Court finds that Plaintiff has sufficiently established the existence of a maritime lien under 46 U.S.C. § 31342.

### iii. Sum of Money at Stake

The fourth *Eitel* factor assesses the reasonableness of the potential award if a default

judgment is entered. In making this assessment, the Court must take into account the amount of money at stake in relation to the seriousness of Defendant's conduct. *Eitel*, 782 F.2d at 1471. If the sum of money at issue is reasonably proportionate to the harm caused by Defendant's actions, properly documented, and contractually justified, then default judgment is warranted. *Bd. of Trs. of Cal. Metal Trades v. Pitchometer Propeller*, 1997 WL 797922, at *2 (N.D. Cal. Dec. 15, 1997). A default judgment is only disfavored when a large amount of money is involved or is unreasonable in light of Defendant's actions. *Truong Giang Corp. v. Twinstar Tea Corp.*, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007). In determining if the amount at stake is reasonable, the Court may consider Plaintiff's declarations, calculations, and other documentation of damages. *Id*.

Here, Plaintiff seeks judgment against the Vessel in the amount of $8,671.83, which represents the amounts owed for berthing and late fees under the Service Agreement while at KKMI's boatyard. (Kaplan Decl., ¶ 9.) Plaintiff also seeks authorization to use its "*custodius legis*" costs (pursuant to a cost bill to be filed post-judgment). (Mot. at 6.) Thus, the sum Plaintiff seeks is directly related to the Vessel's berthing and the amounts due pursuant to the parties' Service Agreement while the vessel was berthed at KKMI's boatyard. Thus, this factor weighs in favor of default judgment.

### iv. Possibility of a Material Factual Dispute

The fifth *Eitel* factor examines the likelihood of dispute between the parties regarding the material facts surrounding the case. *Eitel*, 782 F.2d at 1471-72. Upon defaulting, the defendant is "deemed to have admitted all well-pleaded factual allegations" in the complaint. *DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 851 (9th Cir. 2007) (citations omitted). Here, Plaintiff seeks to recover berthing charges and late fees pursuant to the Service Agreement, as modified by plaintiff's email notice to the Vessel's owner. (Kaplan Decl. ¶ 6.) The amounts directly correlate to those agreed upon in the parties' Service Agreement, as modified by Plaintiff, and Defendant has provided an itemized breakdown of the payments that remain outstanding. (*See* Kaplan Decl. ¶¶ 7-9.) Thus, there is little likelihood of a dispute concerning the material facts in support of Plaintiff's complaint, such that this factor weighs in favor of default judgment.

13

United States District Court
Northern District of California

### v. Whether Default Was the Result of Excusable Neglect

The sixth *Eitel* factor examines whether any interested party's failure to respond to Plaintiff's allegations was the result of excusable neglect. *Eitel*, 782 F.2d at 1471-72. As set forth above, Plaintiff provided notice by publication pursuant to Admiralty Local Rule 6-1(a)(2). Moore, the owner of the Vessel, is on notice of this action, as demonstrated by his phone calls to Plaintiff's counsel after receipt of the initial pleadings in this action. (Alexander Decl. ¶ 5.) Nevertheless, despite ample time and opportunity, neither Moore nor any other interested person filed an answer or otherwise challenged the motion for default judgment. There is nothing in the record suggesting that any individual's failure to appear and litigate this matter is based on excusable neglect. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (default after proper service was not excusable neglect). Thus, this factor weighs in favor of granting default judgment.

### vi. Strong Public Policy Favoring Decisions on the Merits

The final *Eitel* factor examines whether the policy of deciding a case based on the merits precludes entry of default judgment. *Eitel*, 782 F.2d at 1471-72.

Notwithstanding, after an examination of these facts in the aggregate, the undersigned finds that *Eitel* factors one through six outweigh the Federal Rules of Civil Procedure's preference for a decision on the merits, thereby rendering the entry of default judgment proper.

## IV. RELIEF SOUGHT

After entry of default, well-pleaded factual allegations in the complaint are taken as true, except as to the amount of damages. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). To recover damages after securing a default judgment, a plaintiff must prove the relief it seeks through testimony or written affidavit. *Bd. of Trs. of the Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005); *see Pepsico, Inc.*, 238 F. Supp. 2d at 1175 (citing *Televideo Sys., Inc.*, 826 F.2d at 917-18).

### A. Damages

Plaintiff seeks judgment against the Vessel in the amount of $8,671.83 to compensate it for unpaid berthing charges and applicable late fees. (Mot. at 6; Kaplan Decl. ¶¶ 7-9.) Plaintiff further

requests that the Vessel be condemned and ordered sold by the U.S. Marshal, and that such sale be conducted in accordance with general maritime law and local admiralty rules and procedures for the purposes of satisfying the default judgment requested. (Mot. at 6.)

For the reasons set forth above, the Court finds that Plaintiff is entitled to default judgment on its maritime lien in the amount of $8,671.83. Accordingly, Plaintiff's request to foreclose the lien is granted, and the Vessel shall be condemned and sold by the U.S. Marshal at public auction.

**B. Costs**

Plaintiff requests an award of its *custodia legis* costs and that it be permitted to "credit bid" up to its judgment amount at any subsequent U.S. Marshal-conducted auction. (Mot. at 6.) At the hearing, Plaintiff explained that such costs include the daily berthing rate of $70.50 from the date of the Vessel's arrest, any fees imposed by the substitute custodian, insurance charges levied by the U.S. Marshal, publication costs, and court filing fees. With respect to Plaintiff's request to use its *custodia legis* costs, the Court finds that Plaintiff is entitled to such costs, provided Plaintiff substantiates the amount claimed. (*See* Mot. at 6.)

As to Plaintiff's request that it be allowed to credit bid, the local admiralty rules governing payment of bids at public auction sales, provide that, "a plaintiff . . . foreclosing a properly recorded preferred mortgage on, or other valid security interest in the vessel may bid, without payment of cash, certified check or cashier's check, up to the total amount of the secured indebtedness as established by affidavit filed and served by that party on all other parties no later than 14 days prior to the date of sale." Admir. L. R. 9-2(b). Provided that Plaintiff complies with the notice requirements set forth in Admiralty Local Rule 9-2, the undersigned grants Plaintiff's request for an order permitting it to credit bid up to its judgment amount be granted.

**V. CONCLUSION**

For the reasons set forth above, the Court:

1. GRANTS Plaintiff's Motion for Default Judgment against the Vessel "Cygnet" (U.S. Documentation No. 693436), her engines, rigging, sails, boats, tackle, apparel, and furniture in the amount of $8,671.83, and *custodia legis* costs (pursuant to a cost bill to be filed post-judgment);

15

2. That Plaintiff shall recover the amount of its judgment from the foreclosure of its maritime lien against the Vessel "Cygnet," which the Court ORDERS be accomplished through a public sale, to be conducted by the United States Marshal pursuant to Admiralty Local Rule 9-2, and Plaintiff is permitted to credit bid up to its judgment amount at said public sale; and

3. The Court shall retain jurisdiction of this action through the completion of the sale of the Vessel "Cygnet," and any related proceedings.

IT IS SO ORDERED.

Dated: January 24, 2018

KANDIS A. WESTMORE
United States Magistrate Judge